Jorge J. OPPENHEIMER MENDEZ, Plaintiff,

v.

Hector N. ACEVEDO, Executive Director of the Automobile Accident Compensation Administration, et al., Defendants.

Civ. No. 933–73.

United States District Court, D. Puerto Rico.

Sept. 11, 1974.

Nachman, Feldstein & Gelpi, San Juan, P. R., for plaintiff.

Cancio, Cuevas & Mayo, Hato Rey, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Plaintiff, the former legal director of the Automobile Accident Compensation Administration (hereinafter ACAA, as the acronym is written in Spanish), was discharged and has brought suit under the Civil Rights Act, Title 42, United States Code, Sections 1983 and 1985, and under the First, Fifth and Fourteenth Amendments to the Constitution of the United States, requesting declaratory relief, a mandatory injunction and damages as a result of what he alleges was an unconstitutional deprivation of his liberty and property.

The Court proceeded by Order to Show Cause rather than by a Temporary Restraining Order and issue was joined and a trial was held. Trial lasted two weeks during extended sessions and post-trial memoranda were ordered addressed to several questions of law. After trial plaintiff was granted leave to amend the caption and to conform the pleadings to the proof, so as to join the defendants in their official as well as their individual capacities. Several pro-

nouncements by the Supreme Court of Puerto Rico[1] and the Supreme Court of the United States[2] have been delivered both before and after the transcript of testimony was received, which have required revisions of this Opinion and Order.

## I. THE FACTUAL BACKGROUND

ACAA is Puerto Rico's unique response to the problem of automobile accidents and compensation of victims. It is sometimes called Puerto Rico's "No-Fault" law.[3] Jorge Oppenheimer, the plaintiff, was the first employee of the agency. Originally, his title was "attorney", but after the table of organization was drawn and the external, internal and personnel regulations were approved, he was named "Legal Director", a position he has occupied continuously from 1969 to the date of his discharge. ACAA has all the powers of a Public Corporation. Title 9, Laws of Puerto Rico Annotated, Section 2063.

The Executive Director, the chief officer of the Administration, is appointed by the Board of Directors, who in turn, are appointed by the Governor with the advice and consent of the Senate, Title 9, Laws of Puerto Rico Annotated, Section 2060. All employees are excluded from competitive civil service and are placed in a category known as the Exempt Service under the Personnel Law of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Sections 641–702. ACAA, however, immediately upon its organization established its own personnel rules and regulations which governed its own operations. These rules and regulations provided, *inter alia,* that all employees would be secure in their jobs and that there would be no firings except for cause and only after notice of charges and a pre-dismissal hearing were had. These original rules and reg-

---

1. Pastor Lozada v. Canals, R. 73–314, Bar Association Ref. 1974–11, decided February 4, 1974; Diaz Gonzalez v. Superior Court, 0–73–206, Bar Association Ref. 1974–43, decided April 22, 1974.

2. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

3. The statute, as amended, is found at Title 9, Laws of Puerto Rico Annotated, Sections 2051–2065.

ulations were twice amended, once in 1971 to clarify form and again in 1972 to remove any ambiguity that the dismissal provisions were to cover every employee except the Executive Director.

Although a public corporation, ACAA is not a state-instrumentality. It can sue and be sued in its own name, it can contract with others and except for its original funding, it is self-supporting and does not depend upon the public fisc.[4] Notwithstanding the apolitical purpose of ACAA, after the change of administration of the Commonwealth Government, following the 1972 elections, there was a decided change in management personnel. The plaintiff introduced evidence to indicate that this shift and his own discharge were motivated by political considerations. Since the Court bases its opinion on other grounds, this fact is mentioned in passing, and no finding is made on whether there was discrimination based upon political affiliation.

After the 1972 elections, Mr. Frank Fournier, the first Executive Director of ACAA, resigned. For a period of several months thereafter, Mr. Fournier's administrative assistant, Mr. Leopoldo Marcado Santini, was appointed by the Board of Directors as Interim Executive Director. Mr. Hector N. Acevedo was proposed for the post of Executive Director by the Governor's Special Assistant, the defendant, Salvador Rodriguez Aponte. Mr. Acevedo was appointed.

Upon the insistence of Mr. Acevedo, the plaintiff filed disciplinary charges against a lawyer in his department. The matter never came to a hearing because the personnel officer, who under the regulation was to have acted as hearing officer, took ill and went on leave. After several postponements, the accused, a lifelong member of the party in power, wrote a lengthy vitriolic diatribe against the people working in ACAA who were holdovers from the prior Administration and sent this letter to various party leaders including Mr. Rodriguez Aponte.[5] He, in turn, placed his copy in an envelope of the Office of the Governor and sent it by messenger to the Executive Director of ACAA, Mr. Acevedo. Mr. Acevedo had taken over the duties of the personnel officer during the latter's absence and after the receipt of the letter he dismissed the disciplinary charges.

The accused in that case then reviewed files in which she had worked. In one action which had been dismissed for failure to prosecute, she sent a memo to the "legal technician",[6] alleging that he had overlooked two memoranda that had been in the file dated on July 20 and August 13, 1972. The legal technician received the memorandum addressed to him on the 20th of September, 1973. In checking the relevant file, the legal technician and his fellow worker, another legal technician, found that the 1972 memoranda, to which reference had been made, were written on forms that had not been printed for ACAA until May or June, 1973. When they reported this fact to their supervisor, the Legal Director, Mr. Oppenheimer, he ordered a complete investigation and immediately notified the Executive Director. The investigation consisted of checking with the procurement office, finding the order for the new style memo pads, finding the invoice for them and the copy of the first delivery receipt. The legal technician also found the typewriter on which the memoranda were written and the typewriter ribbon

4. The original funding of ACAA was in the nature of a loan which has been repaid. ACAA is financed by a premium which each owner of a motor vehicle must pay in order to procure his vehicle license or its renewal. Once those funds reach ACAA, it is self-supporting.

5. Plaintiff's Exhibit 2.

6. A "legal technician" in ACAA was usually a law school graduate who had not yet passed the bar examination. Such a person performed many legal and quasi-judicial functions but was not permitted to appear in court in representation of the Administration.

and it appeared that the memoranda were written sometime during the Labor Day week-end of 1973. The memoranda were not written by the typist to whom that particular typewritter was assigned. When all this information was gathered and reduced to affidavit and exhibit form, it was turned over to the Legal Director who filed charges with both the Executive Director and the Personnel Director.[7] Two working days later the Executive Director dismissed the charges as being "incomplete . . . defective . . . and partial".[8]

On the following day, the plaintiff, along with other workers in ACAA who were not members of the Union with which there was a collective bargaining agreement, petitioned the Executive Director for recognition of the Brotherhood of ACAA workers. This organization was established for general cooperative and credit union purposes, as well as for the right to petition for grievances. It had been registered with both the Labor and State Departments of the Commonwealth but had never been recognized by ACAA. Heated conversations and exchanges of memos occurred between the Executive Director and Legal Director on the 2nd, 3rd and 4th of October, 1973, concerning the Legal Director's request that the Executive Director disqualify himself as hearing officer in the matter concerning the tampering of documents and for his failure to follow the procedures established by the regulations. On the 4th of October, 1973, the Executive Director sent the plaintiff a letter demanding his resignation because he regarded the latter's position of favoring the recognition of the Brotherhood as a conflict of interest. The plaintiff refused to resign.

The disciplinary rules of ACAA in effect prohibited any discharge without written charges. The applicable rule is set forth in the margin.[9]

---

7. The Personnel Director was still on sick leave and the charges were filed with the assistant in charge of the office, Mr. Bajamondi.

8. Plaintiff's Exhibit 3.

9. Rule V. Disciplinary Proceedings; Discharges and Demotions.
 a. In the case of administrative and technical personnel (assistants to the executive director, medical director, dental director, directors of divisions and/or departments), the recommendations for disciplinary actions, discharges and demotions shall be set out in writing by the Executive Director before the Board of Directors. Once the said recommendation is presented in writing the procedures established in this Rule, parts i, j and k will be followed.

 . . . . .

 i. The Board of Directors of the Automobile Accident Compensation Administration shall deal with all appeals from the decisions adopted by the Executive Director as a Board of Appeals, and shall be composed of the directors. In the future and whenever the Board of Directors shall meet in session to resolve cases of disciplinary actions, firings, suspensions, appeals, etc., it shall be understood that it is meeting as a Board of Appeals.
 In the cases of employees to whom reference is made in part a of this rule, it shall meet as a Board of First Instance. Duties of the Board of Appeals. To resolve on appeal all controversies that arise as a result of firings, suspensions, or demotions which are alleged to be for racial, sexual, religious, national and political discrimination or in violation of the requirements of the regulations and procedures adopted by the Executive Director and the Board of Directors within 15 working days after the filing of the appeal before the Board of Appeals.
 The President of the Board of Directors, shall select a member of the Board to act as examiner or representative in the investigation of cases for consideration before the Board of Appeals. The examiner or representative, acting alone or the Board of Appeals acting in plenary session, shall celebrate meetings as often as necessary.
 Either the Board of Appeals or the examiner or representative, may request legal advice of the legal counsel of the Administration. Cases may be submitted to the Board by the examiner or representative with his decision together with the transcription of the evidence, his findings and conclusions relevant to the case shall be submitted to the entire Board, so that it be the Board that takes the final decision. The member of the Board who has participated in an investigation, case or hearing, shall not be permitted

On October 11, 1973, the Chairman of the Board of Directors called a special meeting at the insistence of the Executive Director. All the Board members, except for the defendant, Juan A. Gil, were present. The agenda had only two items, one of which was the Executive Director's request for permission to fire the plaintiff for lack of confidence. Retained counsel for the ACAA were present. The Board member, Roberto A. Matos, the only lawyer among the defendants, objected in view of the provisions of Rule V(a), hereinabove set out. The matter was tabled at the morning session so that the legal counsel could present a written opinion as to the legality of the proposed action.

Matos then went to see the plaintiff to try to convince him to resign to avoid a scandal and to offer a settlement possibility.[10] Matos and Gill were both absent at the afternoon meeting on the 11th of October. At that meeting the legal counsel submitted their opinion (Exhibit 25) which in essence concluded that Regulation V(a) was incompatible with Section 12 of the Act and was hence, a nullity. The opinion further suggested that if an employee contended that his dismissal was as a result of any discrimination or contrary to the regulations, he would be entitled to a post firing hearing. The Board then concluded that Rule V(a) was a nullity and remanded the matter to the Executive Director. Mr. Acevedo on the 12th of October fired Mr. Oppenheimer by stating in writing that this position was "vacant".

The next Monday, plaintiff petitioned the Board for a hearing alleging that his dismissal was based upon political discrimination and violations of the published procedures. The Board of Directors met on the 17th of October and resolved that it had no power to intervene in the matter.[11]

Mr. Oppenheimer then brought this suit alleging that his property rights and his liberty (freedom of speech and freedom of association) had been impaired by the defendants, individually, and by their conspiracy to deprive him of these rights. After trial a motion was made and granted permitting plaintiff to join each of the defendants in his official capacity.[12] The relief sought includes injunctive relief and damages as well as a prayer for reasonable counsel fees.

## II.

The plaintiff has vigorously contended throughout this litigation that the real motivation for his firing was that he

---

to participate thereafter in the final decision of said case. Three members of the Board shall constitute a quorum to dictate final decision in cases of dismissal of employees. In all other cases, the decisions shall be by a majority of its members. However, in case of tie, the President shall name one or more additional members. If the decision of the Board shall favor the appellant, the Administrator shall comply with said decision and in cases of suspension or firing, said decision shall be retroactive to the date the appellant was suspended or dismissed; provided that the Board of Appeals may authorize the payment if any (total or partial) that may be owed to the reinstated employee or official since the date of his discharge. The Board may also recommend a lesser or greater penalty than the one originally imposed with the corresponding adjustment of salary, if it shall so deem advisable.

j. If the decision of the Board shall be adverse to the employee, said person may apply by way of a writ of revision to the Superior Court, San Juan Division. The Executive Director shall make available all the facilities and personnel that may be needed to the Board of Appeals so that they may carry out their functions.

k. The time periods fixed in this Rule for the different phases of procedure shall be strictly observed.

10. "What I said, if I remember correctly, what I said is possible, 'If you resign, we can help you' rather 'you will continue as a government official and you can be able to obtain another slot, another administrative slot, and as a matter of fact I would recommend it for whatever value that recommendation had' ". T. 37–38.

11. Plaintiff's Exhibit 23.

12. Opinion and Order entered February 26, 1974.

was not a member of the party in power. This political discrimination he equates with an impairment of his right of free association and free speech and thus he claims that he falls squarely within the holding of Perry v. Sindermann, 408 U. S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Evidence was presented to show that there was some attempt to inject the spoils system into the administration of ACAA, but the Court is unconvinced that in the case of Jorge Oppenheimer, the motive was purely political. However, Mr. Acevedo did testify that he lost confidence in the plaintiff because he requested recognition of the Brotherhood. Whether the plaintiff did have a right to associate with other employees of ACAA, who were not covered by the collective bargaining agreement with the Union,[13] is a question that need not be decided.

■ The threshold question is what interest plaintiff had, if any, in continued employment with ACAA as Legal Director to claim entitlement to the procedural safeguards of due process. As a non-probationary public employee, the plaintiff did have a federally protected interest in continued job employment. Arnett v. Kennedy, 416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974). However, since he was not a federal employee, we must look to other sources to define the nature of his property interest.

As the Supreme Court has said:

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564 at 577, 92 S.Ct. 2701 at 2709, 33 L.Ed.2d 548 (1972).

The statute governing the administration of ACAA, provides at Title 9, Laws of Puerto Rico Annotated, Section 2062:

"The Executive Director shall direct and supervise all technical and administrative activity of the Administration and shall appoint or shall hire with the approval of the Board of Directors the administrative and technical personnel necessary to carry out the functions of the Administration and to pay for such services the compensation that the Board may determine. The officials and employees of the Administration shall be included in the Exempt Service of the Personnel Act of the Commonwealth.

The Executive Director shall also have, the following faculties and obligations:

. . . . . .

(6) To prepare regulations for the approval of the Board."

The Personnel Law of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Sections 641 et seq. divides all public employees into three classes, competitive, non-competitive and exempt services. While elaborate procedural safeguards are afforded the competitive service, including notice and pre-termination hearing, no such safeguards are granted either the non-competitive and exempt services. The non-competitive service has certain rights such as a classification of jobs and prerequisites, while the exempt service is service at the will of the appointing authority. The exempt service should include those persons who, because of trust and confidence, assist in the role of governing, while the other services are more concerned with the task of administering. Diaz Gonzalez v. Superior Court, Opinion 74-43, 1974, decided by the Supreme Court of Puerto Rico on April 22, 1974.

In discussing the scope of the exempt service, the Supreme Court of Puerto Rico has said:

"Suffice it to say that heads of departments and the public corporations

---

13. The Union of Employees of ACAA and the Brotherhood are two distinct entities. The former has been recognized and represents all except managerial level employees.

and the administrators and employees of the Legislative Assembly are exempt. The reason to exclude the public corporations from the rules of the Personnel Law and its regulations was to enable such corporations and organs to act with the rapidity and flexibility as their needs and obligations might require, in view of the nature of the work they have to perform." Pastor Lozada v. Canals, Opinion 74–11, decided by the Supreme Court of Puerto Rico on February 4, 1974.

But the law allows a public corporation that is exempt from the Personnel Law to petition, with the approval of the Director of Personnel, to be included or to utilize the services of the Personnel Office in formulating a classification and remuneration plan of its own. Title 3, Laws of Puerto Rico Annotated, Section 648(e). These provisions are optional and not obligatory and allow the public corporations to incorporate its own merit system and to utilize the help of the Personnel Office in so doing. ACAA, according to the testimony of Carlos Lopez, the former Personnel Director of the Administration, did utilize the service of the Personnel Office of the Commonwealth and did organize its own merit system and classifications that included everyone except the Executive Director. Considering that ACAA is designed to compensate victims of automobile accidents and all victims except those excluded by law are entitled to certain benefits, it is not surprising that everyone be included in a merit system for whatever limited policy determinations are to be made are reserved to the Board of Directors and the Executive Director.

Procedural due process is required for all public employees in Puerto Rico who are on the merit system. As Mr. Justice Rigau said in Pastor Lozada v. Canals, supra.

"In other words, in order for a functionary or employee to be entitled to the right of notice and a hearing to be dismissed for just cause some of the following circumstances must concur: that the law establishing his post or employment shall expressly so provide, or that the law establish a fixed term of incumbency for his post or employment, or, without so providing, the law require cause or just cause for his removal. Also, if a public organism should promulgate regulations that require notice and a hearing and just cause in order to separate employees and functionaries from their positions, then such organism is obligated to comply with said regulations, if they are legally valid."

■■ Even if no notice or hearing is required, when a public employee in the exempt service is charged with wrongdoing, he is entitled to a hearing. Arcelay Rivera v. Police Superintendent, 1967, 95 P.R.R. 205. See also Simmonds v. Government Employees Service Commission, (D.V.I.1974), 375 F.Supp. 934. The Court finds that the disciplinary regulations of ACAA were valid and that they constituted part of the property right that plaintiff had in his job that was cloaked with Constitutional protection. Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Adams v. Walker, (7 Cir. 1973), 488 F.2d 1064.

■ The kind of procedures that would satisfy due process requirements may vary to comply with the exigencies of the imaginable situations. Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L. Ed.2d 1230 (1961); Arnett v. Kennedy, supra, at 94 S.Ct. 1645. Here, the very regulations obligated notice and a hearing prior to discharge, and no less was permissible. Nor can the alleged repeal of the regulations after or simultaneous-

ly with plaintiff's dismissal fall within any notion of due process.

 While internal agency regulations are exempted from registration with the Secretary of State and publication in the Rules and Regulations of Puerto Rico, Title 3, Laws of Puerto Rico Annotated, Sections 1046 et seq., regulations that are secret or that change with prevailing wind create invidious discrimination *per se* and deny due process. The Disciplinary Regulations as well as all Personnel Regulations of ACAA had, prior to this case, been given wide circulation within the Administration. They could not be repealed retroactively to permit the plaintiff's dismissal or to prevent "a scandal". The meeting of the Board of Directors on October 11, 1973, was reminiscent of Star Chamber proceedings. More surprising still was the advice of counsel to the Board. On the 11th of October, they advised the Board, in writing:

> "It is our understanding that the Executive Director can dismiss or separate the [plaintiff] and upon so doing, notify the employee of his right to a hearing before the Board of Directors. The celebration of same in accordance with all the procedural guarantees, avoids any problems that may arise regarding him whether the director may fire or can merely recommend".

. . . . . .

In general terms, the procedure is established in Rule V, but the basic and elemental fact is that the employee shall have his 'day in court' be-

fore the Board of Directors and his constitutional rights and processes are guaranteed him at the time of the hearing."[14]

On the following day the Executive Director wrote the plaintiff that his position was "declared vacant", but gave him no notice of his right to a hearing before the Board. The plaintiff, however, wrote the Board, alleging that his dismissal was unconstitutional in that it violated procedural due process established by the regulations and was discriminatory. On the 17th of October, 1973, upon the advice of the same counsel, the Board resolved that it was without jurisdiction to act.

 The Court concludes that plaintiff had an interest in his continued employment encompassed within the constitutional [15] protection of liberty and property. Whatever limitations may in some circumstances be placed upon that right, see Arnett v. Kennedy, supra, under the circumstances of this case, the plaintiff was entitled to notice and a hearing prior to dismissal. Pastor Lozada v. Canals, supra; Colón Gonzalez v. Diaz Gonzalez (D.P.R.1974), 385 F. Supp. 1226; and cases cited therein.

III.

 Having determined that the plaintiff must prevail, it becomes necessary to determine against whom he prevails and what relief can and should be afforded. Only two elements need be pleaded and proved under Title 42, United States Code, Section 1983: first, that the conduct complained of was performed by a person acting under color

---

14. Plaintiff's Exhibit 25.

15. It is unnecessary to decide whether the Fifth or the Fourteenth Amendment applies to Puerto Rico since the result would be the same. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); and in Acevedo Montalvo v. Hernandez Colon, (D.P.R. 1974), 377 F.Supp. 1332 (Three Judge Court); we said:

"Nothing in the course of the creation of a new political status for Puerto Rico in 1950–1952 indicated that such a drastic change in regard to protection of fundamental personal liberties was contemplated [by the creation of the Commonwealth]. On the whole, therefore, while consideration must be given to the unique history and status of Puerto Rico, rights applicable to the states under the Fourteenth Amendment will be found similarly applicable to the Commonwealth."

of state law and, second, that such conduct deprived the plaintiffs of rights, privileges or immunities secured by the Constitution of the United States. Adickes v. Kress, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); Davis v. Board of Trustees of Arkansas A & M College, (E.D.Ark.1967), 270 F.Supp. 528, aff'd (8 Cir. 1968), 396 F.2d 630; El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225, (D.P.R. 1972), 346 F.Supp. 106. On the conspiracy count pursuant to Title 42, United States Code, Section 1985(3), the plaintiff must allege overt acts and show that the purpose of these acts was to further a plan to deprive a person of the equal protection of the laws and as a consequence said person has been deprived of a right or privilege of citizenship. Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338; Hoffman v. Halden, (9 Cir. 1959), 268 F.2d 280; El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225, supra.

In *El Mundo, Inc.*, citing from Hoffman v. Halden, supra, we said:

"If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to the plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during the course, in furtherance of the objects of the conspiracy, with the requisite, purpose and intent . . ., then all the defendants are liable for the acts of the particular defendant under the general principle of agency on which the conspiracy is based."

■ The only act charged against the defendant Salvador Rodriguez Aponte, was his transmittal of the letter sent by the ACAA employee to the Executive Director. That conduct did not deprive the plaintiff of any federally protected right. Hence, to hold Mr. Rodriguez Aponte liable, the plaintiff is obliged to plead and prove that he was a member of the conspiracy. Despite the

vigorous cross-examination to which he was subjected, this defendant has convinced this Court that he never consulted, advised, nor participated in any way in the sequence of events that led to the termination of plaintiff's employment. The routing of the letter from the employee back to ACAA was part of internal staff procedures. If Mr. Acevedo read more into that act, Mr. Rodriguez cannot be blamed. The complaint against Mr. Rodriguez Aponte, individually and as Special Assistant to the Governor of Puerto Rico should be, and here is, dismissed without costs and without attorney's fees.[16]

■ Each of the other defendants is liable personally to the plaintiff for damages. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Each of them has committed an act under color of state law depriving the plaintiff of his constitutionally protected rights. Moreover, each has conspired with the others to satisfy the tests laid down in Griffin v. Breckenridge, supra. The evidence showed that plaintiff was earning $1,680.00 a month at the time of his discharge.[17] The evidence also showed that all employees were entitled to sick leave and vacation time that exceeded one month per year.[18] In view of the rulings below concerning injunctive relief and attorney's fees, this Court believes that recovery of his pecuniary loss should reasonably recompense the plaintiff for his actual and general damages. The Court, therefore, awards the plaintiff $20,160.00 in damages, the equivalent of one year's salary, against the defendants, Hector N. Acevedo, Damian O. Folch, Manuel San Juan, Jr., Roberto Matos, Enrique Vazquez Reyes and Juan A. Gil, in their individual capacities. The judgment shall provide that they are liable jointly and severally for this amount. At the time of trial, plaintiff had had no opportunity to mitigate damages. Even if he has earned some monies in the interim, the sum awarded is

16. Mr. Rodriguez Aponte was ably represented by the Justice Department of the Commonwealth of Puerto Rico.

17. T. 654; T. 917.

18. T. 921–922.

for both actual and general damages. Williams v. Albemarle City Board of Education, (4 Cir. 1973), 485 F.2d 232. Although the issue on malice is a close one, the Court in its discretion denies any award for punitive damages. Cf. Smith v. Losee, (10 Cir. 1973), 485 F.2d 334; Strickland v. Inlow, (8 Cir. 1973), 485 F.2d 186.

The defendants assumed that they were being sued in their official capacity and not as individuals.[19] As individuals, no injunctive relief could be ordered against them. The plaintiff filed a post trial motion seeking to conform the pleadings to the proof and to amend the caption to include the defendants in their official capacities. After full briefing and argument, an order was entered on February 26, 1974, granting plaintiff ten days to re-serve the defendants with the amended caption and the defendants or their successors were granted a period of ten days thereafter to interpose any defenses not heretofore raised and to request a hearing on any matter not tried. No new defenses were raised nor was any further hearing requested.

 The Board of Directors and the Executive Director of ACAA have the power to hire under Section 12 of the Act, Title 9, Laws of Puerto Rico Annotated, Section 2062. The Court finds that these are persons within the meaning of the Civil Rights Act, Title 42, United States Code, Section 1983. Monroe v. Pape, supra; Strickland v. Inlow (8 Cir. 1973), 485 F.2d 186; Jones v. Snead, (8 Cir. 1970), 431 F.2d 1115; Farrell v. Joel, (2 Cir. 1971), 437 F.2d 160; Dixon v. Alabama State Board of Education, (5 Cir. 1961), 294 F.2d 150, cert. denied 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed. 193; Wagner v. Little Rock School District, (E.D.Ark.1974), 373 F.Supp. 876; Colón Gonzalez v. Diaz Gonzalez, (D.P.R.1974), 385 F.Supp. 1226, and are subject to injunctive relief. Both injunctive relief and damages may be awarded. Dause v. Bates, (D.D.Ky. 1973), 369 F.Supp. 139. Lontine v. Van Cleave, (10 Cir. 1973), 483 F.2d 966. However, to be entitled to injunctive relief, a remedy at law must be inadequate, there must be a showing of irreparable harm, and the rights asserted must be important and the public interest must be served. In Civil Rights cases it has been held that state officials should not be liable in the absence of a finding of bad faith in the discharge of their duties. Scheur v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Gaffney v. Silk, (1 Cir. 1973), 488 F.2d 1248, 1250-1251; Harrison v. Brooks, (1 Cir. 1971), 446 F.2d 404; Cobb v. City of Malden, (1 Cir. 1953), 202 F.2d 701 (Magruder, J. concurring). Here, there was deliberate and purposeful action taken that bordered on the reckless.

 We find that irreparable harm has been done. The euphemistic method of discharge by declaring the plaintiff's post vacant does not detract from the fact that he was dismissed for an alleged conflict of interest, a serious charge against an attorney. The Personnel Regulations of the Commonwealth of Puerto Rico, if rigidly applied, could be employed to prevent plaintiff from ever again serving in a public position. Arcelay Rivera v. Superintendent of the Police, supra; 3 Rules and Regulations of the Commonwealth of Puerto Rico, Sections 647-203. The actions of the Executive Director and the Board Members were deliberately taken and were in bad faith, even if a subjective test were applied. Their reliance upon the advice of counsel affords them no shield for they knew that under the regulations they had enacted and published, plaintiff was entitled to a pretermination hearing. In the face of this action, there is a power and a duty in the Federal courts to order injunctive relief to protect constitutionally guaranteed rights. Therefore, the judgment entered hereon shall include injunctive relief against

19. Testimony of Mr. Folch, T. 910–911. The defendant, Roberto Matos, filed his own answer and then allowed ACAA's retained counsel to take over his defense.

the Executive Director and the Board Members or their successors to reinstate the plaintiff to the position from which he was improperly removed.

 Plaintiff has also prayed for the award of attorney's fees. Attorney's fees should be awarded only in exceptional cases, Bell v. School Board, (4 Cir. 1963), 321 F.2d 494, 500. The Court may, however, grant such relief where private suits effectuate the purposes of the legislation. Long v. Georgia Kraft Company, (5 Cir. 1972), 455 F.2d 331; Clark v. American Marine Corp., (5 Cir. 1971), 437 F.2d 959; Lea v. Cone Mills Corp., (4 Cir. 1971), 438 F.2d 86; Parham v. Southwestern Bell Telephone Co., (8 Cir. 1970), 433 F.2d 421. The emphasis is not to be

> "placed solely on whether the defendants should suffer pecuniary punishment or be additionally deterred. Rather the objective is to assure that the plaintiff, and others who might similarly be forced to great expense to vindicate clear constitutional claims, are not deterred from securing such vindication by the prospect of costly, protracted proceedings which have become necessary only because of the obdurate conduct of the defendants". Stolberg v. Members of the Board of Trustees For the State Colleges of the State of Connecticut, (2 Cir. 1973), 474 F.2d 485.

The financial burden of litigation should be removed "from the shoulders of the plaintiff seeking to vindicate the public right". Knight v. Auciello, (1 Cir. 1972), 453 F.2d 852. See also Colón Gonzalez v. Diaz Gonzalez, supra; Zimmerer v. Spencer, (5 Cir. 1973), 485 F. 2d 176; Gates v. Collier, (5 Cir. 1973), 489 F.2d 298.

 The Court, therefore, in its discretion, and considering the length of trial,[20] the flagrant violation of due process, and the constant contacts that attorneys have with the government and government officials that ordinarily de-

ter them from involvement in civil rights litigation, will award counsel fees after a hearing that will be scheduled to determine the reasonable amount of such fees.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate Judgment shall be entered.

---

20. The testimony covers nearly 1100 pages and does not include the numerous chamber conferences, motions and briefs that were required.