Israel ALICEA ROSADO, Plaintiff,

v.

Ramon GARCÍA SANTIAGO, Personally and as Secretary of the Department of Social Services of the Commonwealth of Puerto Rico, Efraín Colón Torres, Personally and as Director of the Regional Department of Social Services, Caguas, Puerto Rico, Defendants.

Civ. No. 75–1015.

United States District Court,
D. Puerto Rico.

Feb. 27, 1976.

Francisco R. González, Cayey, P. R., Nachman, Feldstein & Gelpi, San Juan, P. R., for plaintiff.

Miriam Naveira de Rodon, Sol. Gen., for the Commonwealth of Puerto Rico.

Jose A. Acosta Grubb, Dept. of Justice, San Juan, P. R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

The Court, after hearing all of the testimony, examining all exhibits admitted into evidence, and after due deliberation, now makes the following

## FINDING OF FACTS

1. Plaintiff Israel Alicea Rosado, was until the 1st of August, 1975 a member of the competitive service under the Personnel Law of the Commonwealth of Puerto Rico (3 LPRA §§ 641–702).

2. Plaintiff's official personnel file reveals that in sixteen years of government service no adverse report or comment was lodged against him and that he has on at least three occasions been commended for services performed by the last three Secretaries of Social Welfare of the Commonwealth of Puerto Rico.

3. Except for the time credited while attending graduate school at the Río Piedras campus of the University of Puerto Rico, all of the service of Plaintiff has been in the city of Barranquitas, Puerto Rico.

4. The Plaintiff lives at Hoyoles Ward, Coamo, Puerto Rico, with his wife, who is a school teacher, and his children, all of whom are students.

5. Plaintiff's service was interrupted in 1968 when he received a leave of absence to run for Mayor of Barranquitas in that year on behalf of the People's Party. Plaintiff was defeated in this bid.

6. His political affiliation was well known in the community of Barranquitas and by co-workers in the Department of Social Services. However, we do not find that there is sufficient credible evidence in this case to link it to the action taken against Plaintiff.

7. From 1965 to 1975, Plaintiff served as District Director of the Barranquitas office of the Department of Social Services. This job had administrative and professional responsibilities but did not have any policy making responsibilities.

8. During 1974 the Plaintiff, in pursuance of his responsibilities, advocated a physical move from the building being occupied by the Department of Social Services in Barranquitas. Although the building whence the move was sought is owned by a corporation owned by the Mayor of Barranquitas, Efraín Colón Torres and his relatives, the evidence fails to convince the Court that there was any intervention by said Efraín Colón Torres, in the events that occurred subsequent to May 28, 1975. Mr. Colón Torres is a close acquaintance of the co-defendant, Ramón García Santiago. These two persons did meet on several occasions during 1975 but there is no evidence that punitive action against the Plaintiff was the subject of any of these conversations.

9. In later 1974 and early 1975, the implementation of Federal Food Stamp program was begun in the Commonwealth of Puerto Rico. Barranquitas was chosen as one of the first cities to distribute the food stamps.

10. There were many technical and administrative difficulties encountered in the implementation of this program in Barran-

quitas, some occasioned by the limitations of physical space in the building occupied by the Department of Social Services there and others caused by the centralization of the mechanics in San Juan and by technical problems in computer technology.

11. The Plaintiff was summoned to the Caguas Regional office by his regional supervisors and by the Regional Director, Lizzy Torres. The meeting was unpleasant for Plaintiff since it was the first time that his administration of the Barranquitas District was questioned, but again, the Court finds that neither this meeting nor any subsequent conversation or events that occurred between Plaintiff and the co-Defendant, Lizzy Torres, had any effect on the events subsequent to May 28, 1975.

12. The Plaintiff had particular complaints about the administration of the Food Stamp Program and his regional supervisor for that program, Mr. Jesús Jiménez, requested that Plaintiff put his complaints and suggestions in writing.

13. On May 28, 1975, Plaintiff wrote a letter to Mr. Jiménez, with copies to Lizzy Torres and Ramón García Santiago, the Secretary of Social Services, detailing his complaints and suggestions.

14. Mr. Alicea received no written reply to that letter but on June 17, 1975 he was summoned by telephone to attend a meeting at the offices of the Secretary in San Juan, on the 20th day of June, 1975.

15. That meeting was precipitated, according to the Secretary, Mr. García Santiago, by the use of the Spanish word "irregularidades" in the letter.[1]

16. At the June 20, 1975 meeting, the Secretary stated that Mr. Alicea could not explain any such acts within the Food Stamp Program, but described only technical difficulties that were bound to be present when any program of such vast dimensions was initiated.

17. There was conflict of evidence upon whether the Secretary was overly concerned with the letter having been sent to anyone other than the addressees thereof, and the Court has resolved that conflict by finding that Mr. García Santiago was concerned with publication of the letter or its falling into the hands of the media.

18. On July 24, 1975 the Plaintiff received a letter from the Secretary, Ramón García Santiago, advising him that as of August 1, 1975, Plaintiff was being transferred to the Bayamón office to handle adoption matters.

19. At the time of receipt of the letter, Plaintiff was on sick leave and was, pursuant to medical orders, to remain home until August 15, 1975. Nevertheless, on the same date he received the letter, Plaintiff wrote the Secretary requesting the reasons for the transfer. No reply was ever sent.

20. The Secretary testified that the reasons for the transfer were (1) the letter written by Plaintiff in May 28, 1975 (2) the need for extra personnel in the Bayamón office to handle the numerous adoption requests, and (3) that Plaintiff had the qualifications for the Bayamón position.

21. The Court finds that the only reason for the transfer was that Plaintiff wrote the letter. There was need of extra personnel in Bayamón but Barranquitas did not have enough personnel either. If transfer of social workers to Bayamón was necessary, there were others who were qualified, but there was no one in the Barranquitas office qualified under Personnel regulations to fill the post of District Director. As of the date of the trial no one has been permanently assigned to the Barranquitas office as District Director.

1. In Appleton's New Cuyas' Dictionary, English-Spanish and Spanish-English, 1966, "irregularidad" is translated as "irregularity"; in Velázquez' Spanish-English Dictionary, "irregularidad" is translated as "irregularity, deviation from rule, disorder, misgovernance, abnormity." In Vox, Diccionario General de la Lengua Española (Barcelona, 1970), the word "irregulridad" is defined as "1. quality of being irregular. 2. Canonical impediment to exercise or receive ecclesiastic orders because of natural defects or transgressions. 3. Euphemistically, immorality in the realm of public or private acts or administration." (translation by the Court).

22. The transfer was a demotion, and by reason of Plaintiff's circumstances, is in effect a discharge. The technical rating of Social Worker V, may have been the same but there is no question that in title, prestige and duties, the job of District Director holds a higher place in the Departmental hierarchy. There was also a pay differential because no allowance was made for per diem or travel expenses or for the extra travel time which is close to 4 hours daily.

23. Not only was the transfer a demotion and/or a discharge, it was also punitive. It was ordered solely for the purpose of reprimanding Plaintiff.

24. The Plaintiff, as a career civil servant, had tenure and an expectancy of continued employment with the Social Services Department of Puerto Rico. Under the law of Puerto Rico a member of the competitive service cannot be discharged or demoted except for just cause. 3 LPRA § 671(a). A hearing after charges have been filed, is required.

25. The punitive action taken against the Plaintiff was in response to the Plaintiff's federally protected right of free speech.

26. There was no plan or agreement among the Defendants, and neither Efraín Colón Torres nor Lizzy Torres participated in any way with the decision, to punish, demote and/or discharge the Plaintiff.

27. Ramón García Santiago was acting under color of his authority as Secretary of Social Welfare and his action in depriving Plaintiff of his federally protected rights was state action.

28. Plaintiff is entitled to be reinstated in his position as District Director of the Barranquitas District of the Social Services Department of the Commonwealth of Puerto Rico.

## CONCLUSIONS OF LAW

1. Plaintiff has alleged that Defendants, under color of state law, deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. These are the basic elements of a claim for relief under 42 U.S.C. § 1983. This Court, therefore, has jurisdiction over the parties and subject matter. *Adickes v. Kress*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Oppenheimer Mendez v. Acevedo*, 388 F.Supp. 326, 335–36 (D.C.P. R.1974) affirmed, 512 F.2d 1373 (C.A. 1, 1975).

2. Property rights are within the ambit of protection of the Civil Rights Statute. *Lynch v. Household Finance Corporation*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1974); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

3. Property rights include the legitimate expectancy of the continuation of public employment. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

4. The dimensions of the property rights are defined by existing rules and understandings that stem from state laws. *Board of Regents v. Roth*, supra.

5. Under the law of Puerto Rico (3 LPRA §§ 641–702), a public employee in the competitive service may not be demoted or discharged unless there is good cause and he is entitled to an immediate post-termination hearing. *Pastor Lozada v. Canales*, R. 73–314 Puerto Rico Bar Association Ref. 74–111 (1974).

6. The so-called "transfer" ordered herein by the Secretary of Social Services, was not a transfer within the meaning and spirit of the Personnel Law of Puerto Rico. It was a punitive action taken against the Plaintiff for exercising his federally protected right of free speech. Under the circumstances of this case the action of the Secretary of Social Services constituted a demotion or a "constructive" discharge of Defendant.

7. A public employee may not be discharged or demoted for exercising his right of free speech. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20

L.Ed.2d 811 (1968): *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

8. The plaintiff is entitled, as a matter of law to injunctive relief. *Oppenheimer Mendez v. Acevedo,* 388 F.Supp. 326 (D.C.P. R.1974), aff'd, 512 F.2d 1373 (C.A. 1, 1975); *González v. González,* 385 F.Supp. 1226 (D.C.P.R.1973).

9. The Plaintiff is entitled to be reinstated to his position as District Director of the Barranquitas Office of the Department of Social Services. *Oppenheimer Méndez v. Acevedo,* supra.

10. In order to be entitled to injunctive relief, the remedy at law must be inadequate, there must be a showing of irreparable harm and the rights asserted must be important and in the public interest. Moreover, state officials should not be liable in the absence of a finding of bad faith. *Scheur v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gaffney v. Silk,* 488 F.2d 1248 (C.A. 1, 1973); *Harrison v. Brooks,* 446 F.2d 404 (C.A. 1, 1971). In this case any remedy at law is inadequate.

11. The judgment shall provide for the reinstatement of the Plaintiff in his former position, which remained unoccupied until at least the end of the trial. A hearing will be held on the issue and quantum of damages respecting the Defendant, Ramón García Santiago, individually.

12. All actions brought under 42 U.S.C. § 1985 and all claims for relief brought against the Defendants, Efraín Colón Torres, individually, and against Lizzy Torres, individually and in her representative capacity, shall be dismissed with prejudice. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1973); *El Mundo, Inc. v. Puerto Rico Newspaper Guild, Local 225,* 346 F.Supp. 106 (D.C.P.R. 1972).

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate Judgment shall be entered.

IT IS SO ORDERED.