Jose R. BONILLA, et al.,
Plaintiffs, Appellants,

v.

Jose A. NAZARIO, etc., et al.,
Defendants, Appellees.

No. 87–1673.

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1988.

Decided March 30, 1988.

Pedro Miranda Corrada, San Juan, P.R., with whom Hector Urgell Cuebas, Santurce, P.R., was on brief, for plaintiffs, appellants.

Frank Gotay–Barquet and Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, P.R., on brief, for Ramonita Perez–Rodriguez, amicus curiae.

Carlos Del Valle with whom Hector Rivera Cruz, Secretary of Justice, Rafael Ortiz Carrion, Sol. Gen., Marcos A. Ramirez Irrizarry, Jose A. Sanchez Alvarez and Ramirez & Ramirez, Hato Rey, P.R., were on brief, for defendants, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

This is another in a long line of "political discharge" suits arising out of the 1984 election of a new governor of Puerto Rico. *See, e.g., Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987); *Zayas–Rodriguez v. Hernadez,* 830 F.2d 1 (1st Cir.1987); *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987); *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Plaintiffs-appellants were discharged as Regional Managers of the Puerto Rico Automobile Accident Compensation Administration ('AACA') and reassigned to lesser positions. They brought suit for reinstatement and damages, claiming their dismissals violated the U.S. Constitution. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (finding, with certain exceptions,

that firing a government employee because of political affiliation violates the First Amendment). They further alleged that they had been harassed and discriminated against in their continuing employment in the AACA.

Defendants-appellees moved for summary judgment on the grounds that they had "qualified immunity" in respect to the damages claim. *See Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The district court granted the motion, and, *sua sponte,* dismissed the complaint on the merits. Appellants challenge both rulings.

## I. *Qualified Immunity*

■ We have thoroughly discussed the relevant legal standard in previous opinions, and there is no need to replow that ground here. *See, e.g., Juarbe–Angueira, supra; Mendez–Palou, supra.* Simply put, where the case concerns upper-level, managerial positions that are not "purely technical or scientific in nature," defendants are normally entitled to qualified immunity from liability for damages. *Juarbe–Angueira,* 831 F.2d at 14. That is to say, in such circumstances we will normally find that the job in question *"potentially* concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication." *See Mendez–Palou,* 813 F.2d at 1259 (emphasis added). Applying that standard here, we find that the district court properly granted defendants' motion for summary judgment in respect to qualified immunity.

■ The AACA administers Puerto Rico's unique system of compensating automobile accident victims, irrespective of fault, for medical expenses, disability, dismemberment, death, and funeral expenses. P.R.Law Ann. tit. 9, § 2054 (1976). The AACA has broad authority to

> Investigate all phases of the problem of automobile accidents including the phases of financial liability and of accident prevention and make pertinent rec-

ommendations to the Governor and the Legislature.

> Contract [with] physicians, hospitals, clinics, laboratories and other suppliers of medical services to carry out the purposes of this chapter [the Automobile Accident Social Protection Act]....

> Fix, annually, with the approval of the Insurance Commissioner[,] the premium that each vehicle shall pay at the time of registering the same.

P.R.Laws Ann. tit. 9, § 2063(2)-(4) (1976). At the very least, the AACA's authority in respect to auto insurance premiums, accident liability, and appropriate medical care "encompasses issues that potentially involve partisan political disagreement concerning policy goals and implementation." *Mendez–Palou,* 813 F.2d at 1260 (referring to Puerto Rico's Aqueduct and Sewer Authority).

In our view, the Regional Manager's job "potentially concerned" these "matters ... and involved at least a modicum of policymaking responsibility" as well as "access to confidential information" and "official communication." *Mendez–Palou, supra.* The Regional Manager holds an important position within the AACA. The Puerto Rico civil service system classifies it as a "trust" (as opposed to "career") position, P.R.Laws Ann. tit. 3, §§ 1349–51 (1978), and the official job description (*see* Appendix) calls it a post of "high responsibility and confidence where the activities of a Regional Office are directed and coordinated." A Regional Manager "plans, coordinates, [and] assigns the work of a large group of office and field employees," handles labor-management relations, "[p]repares orientation for different entities regarding the benefits offered by the Agency," and "[i]nstructs field and office personnel regarding the interpretation of rules and norms." He "attends meetings, activities and conferences when so required." He must have the "ability to [m]ake independent decisions in the application of the established policy regarding work problems." And he must be able "to treat the public with tact, courtesy and serenity." The power to interpret regulations, to set interpretive policy, to decide how or to

what extent, for example, claimants will obtain medical redress or how much evidence the hearing examiner will insist upon before a claim is accepted, all "potentially" concern important policy matters. It seems likely, from the job description, that he has policy-making responsibility, that he confers with his superiors about such matters, and that he communicates them to the public. In short, the job seems a typical upper-level position that is not "purely technical" or "scientific" in an agency that provides an important social service and affects matters about which there could be political disagreement. Under *Juarbe-Angueira* and *Mendez–Palou,* defendants are entitled to qualified immunity.

Appellants argue that they had little or no discretion in performing those duties, and were not, therefore, truly policy makers. In *Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258 (1st Cir.1987), however, we pointed out that " 'policy implementation is just as important as policymaking.' " *Id.* at 262 (quoting *Branti,* 445 U.S. at 530, 100 S.Ct. at 1301 (Powell, J., dissenting)). The Regional Managers here, like the Regional Directors in *Echevarria v. Gracia–Anselmi,* 823 F.2d 696 (1st Cir.1987), *Collazo Rivera, supra,* and *Jimenez Fuentes, supra,* are the Executive Director's primary representatives within their respective regions, and are charged with implementing his policies. General regionally based policies of implementation can affect (potentially) such matters as auto insurance premiums or appropriate medical treatment to the point where, (potentially) they encompass matters about which there could be partisan disagreement. Thus, party affiliation could be an appropriate qualification for the performance of such jobs. *See Echevarria, supra; Collazo Rivera,* 812 F.2d at 262; *Jimenez Fuentes,* 807 F.2d at 246.

## II. *Dismissal on the Merits*

The defendants (appellees) in this case moved for summary judgment only as to the issue of qualified immunity from liability for damages. The district court, however, granted summary judgment *sua sponte* in respect to plaintiffs' entire complaint, including their request for reinstatement in their former jobs and for certain vacation and sick leave benefits that they say defendants unlawfully took from them. We believe this was error.

A *sua sponte* order of summary judgment is appropriate only if "the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). As Professors Wright, Miller, and Kane point out, whenever a court "believes that the non-moving party is entitled to judgment, great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 at 34 (1983). We can find no order or paper in this case that put plaintiffs on notice that they had to bring forward all their evidence about the nature of the Regional Manager's job. They chose to fight the motion for "qualified immunity" on the basis of the job description. They might, or might not, have additional evidence about the responsibilities of the job as it was actually practiced. They asked the district court in their motion for rehearing for "a full development of the record to ascertain the true nature of the agency and the position involved." They must at least have an opportunity to tell that court precisely what they intend to prove and how, before we (or the district court) can say there are no "genuine" and "material" issues of fact. *See* Fed.Rule Civ.P. 56. They must also have an opportunity to explain the nature of their claim for vacation and other benefits.

*The judgment of the district court in respect to qualified immunity is affirmed. The remainder of the judgment is vacated and the case is remanded for proceedings consistent with this opinion.*

## APPENDIX

### REGIONAL MANAGER

### NATURE OF THE WORK

Administrative and supervision work of high responsibility and confidence where

the activities of a Regional Office are directed and coordinated.

DISTINCTIVE ELEMENTS OF THE JOB

The employee in this class is responsible for the planning, assigning and supervising of the work of numerous employees in accordance with the established criteria and proceedings.

The job is subject to general supervision through the review of reports and visits from administrative supervisors.

EXAMPLES OF THE JOB

Plans, coordinates, assigns the work of a large group of office and field employees dedicated to the attention and solution of claims from victims of traffic accidents.

Works in all related to the labor-management aspects, following established directrixes.

Determines the adjudication of benefits in cases of disability and death.

Attends meetings, activities or conferences when so required.

Holds preliminary conferences with attorneys and claimants who appeal or request public hearings.

Prepares orientation for different entities regarding the benefits offered by the Agency.

Handles a large volume of correspondence and renders written reports.

Instructs field and office personnel regarding the interpretation of rules and norms.

Carries out related work as requested.

KNOWLEDGE, ABILITIES AND SKILLS

Substantial knowledge of the laws, rules, regulations and policies established by the ACAA.

Substantial knowledge of modern methods and procedures of handling a large office of claims in a public corporation.

Knowledge of the structure of the Government of the Commonwealth of Puerto Rico and of the functions of its Agencies, as well as the relationship among itself and the municipal governments.

Knowledge of accounting and the ability to apply it to the needs of his job.

Ability to plan, assign and direct the work of a large number of office and field employees.

Ability to take independent decisions in the application of the established policy regarding work problems.

Ability to understand, interpret and explain requirements of Law, regulations and rules.

Ability to express himself in a clear and concise manner, verbally and in writing.

Ability to treat the public with tact, courtesy and serenity, as well as to establish and maintain effective work relationship with his fellow workers and other persons with whom he deals.

PREPARATION AND EXPERIENCE

Substantial experience in a progressive manner in insurance claim activities of a public service or private corporation, including experience in supervision and administrative work.

Bachelor's Degree from an acknowledged University or College.

BASIC SALARY $1,160.00.