**Ramonita Perez RODRIGUEZ, Plaintiff,**

v.

**Jose Ariel NAZARIO, et al.,
Defendants.**

**Civ. No. 85–0663(RLA).**

United States District Court,
D. Puerto Rico.

July 31, 1989.

Stanley Feldstein, Feldstein Gelpi Hernandez & Gotay, Old San Juan, P.R., for plaintiff.

Marcos A. Ramirez Lavandero, Ramirez & Ramirez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

Plaintiff, Ramonita Pérez Rodríguez, the Manager of the Caguas Regional Office of the Automobile Accident Compensation Administration (ACAA), filed the present suit seeking equitable relief, damages, and attorneys fees for politically based violations of her civil rights. She alleges that the defendants, except for Rivera (the present Executive Director of ACAA), conspired and directed her demotion from Manager of the Caguas Office of ACAA to a supervisor position in the same unit (with an approximate $600.00 monthly cut in pay) solely because of their animosity against her political affiliation.[1] *See* 42 U.S.C. §§ 1983 and 1985(3). As for Rivera, plaintiff appears to allege a violation of 42 U.S.C. § 1986[2] insofar as she claims Rivera has refused to protect plaintiff's constitutional rights despite his power to make changes at the office and his knowledge of plaintiff's plight. The constitutional rights plaintiff alleges have been irreparably harmed are her first amendment right to freedom of association, which defendants have allegedly violated by demoting her for

---

1. Plaintiff is a member of the statehood seeking New Progressive Party whereas defendants are allegedly members of the Popular Democratic Party which has been in power since 1984 and which advocates the commonwealth (free association with the United States) status for Puerto Rico.

2. Plaintiff does not cite the statute in Count Three of her complaint (the sole one against Rivera) but the moving papers argue the issue as if it had been pleaded and we will assume that it is in issue here.

42 U.S.C. Section 1986 reads as follows:
Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of person guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

political reasons; and her fourteenth amendment right to equal protection of the law, which defendants have allegedly violated by treating her dissimilarly from other similarly situated individuals.

Although plaintiff was originally demoted in March 1985, she was reinstated to her former position and pay in January 1986 pursuant to a preliminary injunction order entered by this Court. *See* docket No. 30. In June 1986, plaintiff filed a second amended complaint whereby all the present defendants except for Nazario were added to the suit. The defendants now are: (1) José Nazario, the former executive of ACAA; (2) Carmen Rivera Vázquez, the present executive director of ACAA; (3) María S. Kortright Soler; (4) Concepción De Jesús; (5) David Castrodad; and (6) Ibrahim Burgos—the latter four are "officers or employees of ACAA." All of them are sued in their personal capacities and, except for Nazario, in their official capacities as well.

The complaint generally alleges that the defendants in one way or another have conspired or acted to violate plaintiff's civil rights as well as our preliminary injunction order by first demoting plaintiff and then not providing her with any meaningful duties or authority after she was reluctantly reinstated. In other words, plaintiff claims that though she has her job back, it exists only in form because the substance has been completely undermined by defendants' concerted actions or omissions (the omission is more for the case of Executive Director Rivera who has allegedly washed her hands of the unconstitutional events around her regarding plaintiff).

Before the Court are two dispositive motions filed by defendants:[3] (1) motion to dismiss for failure to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1985(3) Fed.R.Civ.P. 12(b)(6); and (2) motion for summary judgment based on qualified immunity pursuant to *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and its progeny—particularly the recent case of *Bonilla v. Nazario,* 843 F.2d 34 (1st Cir.1988), which appears factually indistinguishable from the present case. Fed.R.Civ.P. 56.

Succinctly, defendants argue that plaintiff's Section 1985(3) and their tag along Section 1986 claims must be dismissed because "wholly political conspiracies, untainted by racial animus or bias are outside the scope of 42 U.S.C. § 1985(3)." Defendants state that Section 1985(3) specifically addresses only racial or otherwise class-based "invidiously discriminatory animus behind the conspirator's action" and that there is no such protected class in the present case.

As to the qualified immunity issue, defendants argue that in 1984 it was not clearly unlawful to demote a person in plaintiff's position, with the inherent duties of that job, because of her political affiliation. Therefore, the defendants state that they should not be held liable for damages in this suit.

An additional argument raised by defendant Carmen Rivera in her motion to dismiss is based on the Eleventh Amendment to the United States Constitution which provides sovereign immunity in favor of public officials sued in federal court. (The argument concerns only defendant Carmen M. Rivera in her official capacity as Executive Director of ACAA.) She argues that ACAA is a public corporation and an arm of the state. Therefore she feels ACAA is entitled to sovereign immunity since any judgment in this case would have to come from state coffers which is barred by Supreme Court jurisprudence beginning with *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and continuing

---

**3.** Although the last paper submitted on the issue of summary judgment was filed on July 12, 1988, both the motion to dismiss and summary judgment had been pending before this Court for a considerable time. There are several reasons for our delay. The first one being the Court's extensive time constraints regarding the handling of the multidistrict litigation known as the *Dupont Hotel Fire Litigation* MDL–721. In addition, the Clerk's office lost the complete file of this case prompting several months of investigation to locate the file and concluding with the creation of a dummy file whereby copies of all the motions submitted were requested of counsel and a new file was created.

recently with the case of *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Rivera focuses her arguments solely on plaintiff's claims for damages against her in her official capacity and she does not dispute plaintiff's right to sue her for injunctive relief in federal courts. Rather, her main contention is simply that neither states nor their legitimate dependent agencies can be sued for damages in federal court absent an expressed waiver of their eleventh amendment immunity. And that such waiver was never expressly made by ACAA in the present litigation.

Plaintiff filed opposing arguments to each one of the attacks made by defendants in their two motions. Regarding the issue of the failure to state a claim for relief under Section 1985(3), plaintiff points to series of paragraphs in her second amended complaint which allege that a conspiracy to invidiously or maliciously discriminate against her was carried out by defendants because of their animus against plaintiff's political affiliation and that her political *party,* the New Progressive Party, constitutes a protected class under Section 1985(3). Regarding the eleventh amendment issue, plaintiff states that it does not apply because ACAA is a separate public corporation from the state with a capacity to sue and be sued and that any judgment in this case would not be paid by the state itself. Finally, regarding defendants' motion for summary judgment based on qualified immunity, plaintiff raises a series of opposing arguments which in essence reflect her position that qualified immunity is not a defense to equitable relief;[4] that defendants have failed to establish that they perform discretionary functions which is a requisite for qualified immunity; and that defendants' actions were violative of clearly established law and therefore qualified immunity is not warranted.

We will discuss each of these three arguments in the order they were presented. Our conclusion is that defendants are entitled to qualified immunity relief and there-fore their motion for summary judgment will be granted. The motion to dismiss will be granted insofar as it concerns the 1985(3) action given our finding that a political party such as the NPP does not constitute a protected class under Section 1985(3). Finally, we hold in abeyance the issue of eleventh amendment immunity pending further documentary support by defendants for the contention that any judgments that may issue in this case would not be paid from state coffers, and thus that the protections of *Edelman v. Jordan* and its progeny would apply to this case.

## DISCUSSION

### A. Motion to Dismiss–Sections 1985(3) and 1986

■ The symbiotic relationship between Section 1985(3) and Section 1986[5] is not disputed in this case. Consequently, our discussion will focus solely on Section 1985(3).

Title 42 U.S.C. § 1985(3) reads in relevant part

If two or more persons in any state or territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his personal property, or deprived of having and exercising any right or privileges of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The seminal case in this area of civil rights conspiracies is *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29

---

**4.** Although this is a legal truism it is not an issue in this case given that defendants, in their motions, have conceded the point.

**5.** *See supra* footnote 2.

L.Ed.2d 338 (1971). There are four basic or traditional elements necessary to state a cause of action under Section 1985(3) according to *Griffin.* These are: (1) the defendants must conspire or there must be a conspiracy by defendants; (2) for the purpose of depriving either directly or indirectly any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) the defendants must act in furtherance of the object of the conspiracy, whereby (4) one was injured in his personal property or deprived of having and exercising any right or privileges of a citizen of the United States. The *Griffin* court, however, added one more element to this list. In order to avoid having Section 1985(3) transformed into run-of-the-mill federal tort law, the majority in *Griffin* espoused a fifth element which requires that (5) there must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' actions. The Court's concerns went to the roots of the 1985(3) statute which was an offshoot of the 1871 Civil Rights Act which, in turn, reflected a Reconstruction concern for the protection of recently liberated blacks and their supporters in the South. Thus racial concerns were always at the heart of the statute and the *Griffin* court wanted to ensure that this compelling but limited purpose was not lost in the expansive thrust of modern tort litigation. In short, the Court wanted to avoid giving regular tort cases a free ride on the coattails of this particular provision of the civil rights legislation.

The *Griffin* analysis of Section 1985(3) was dramatically echoed by the Supreme Court in the recent case of *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825; 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Envisioning a steep and slippery slope towards unmitigated general tort litigation in the guise of a Section 1985(3) cause of action in cases of conflicts between political groups, the Court expressly found that wholly political conspiracies untainted by racial animus or bias were outside the scope of Section 1985(3). Inferior federal courts have applied the *Scott* holding to cases more akin to the one at bar. For example, the Fourth Circuit in *Harrison v. KVAT Food Management, Inc.,* 766 F.2d 155, 161 (4th Cir.1985), rejected a claim by a member of the Republican Party who argued that he had been dismissed from a job only because he was a member of that party. The Fourth Circuit reasoned that Republicans as a class were not protected by Section 1985(3). The Fourth Circuit relied heavily on what it termed was the *Scott* Court's noticeable lack of enthusiasm for expanding the coverage of Section 1985(3) to any classes other than those expressly provided by existing jurisprudence. The crux of this issue in the case at bar is focused entirely on this fifth element articulated by *Griffin* and followed by *Scott,* i.e., that there be a class-based invidiously discriminatory animus behind the conspirators' action. Consequently, we must focus on plaintiff's allegations to determine if indeed the class basis for their alleged discrimination is one that falls under the penumbra of allowable Section 1985(3) claims.

Plaintiff makes no attempt to tie her Section 1985(3) action to any notion of *racial* animus. Instead, her underlying claim is based entirely on *political* animus. The gravamen or her claim is that as a member of the NPP she was part of a protected class under Section 1985(3) and that as part of that protected class defendants conspired against her. Therefore, the main issue at the threshold of this case is whether or not being a member of the NPP is protected against discrimination pursuant to Section 1985(3). We find no legal basis for the protection plaintiff seeks. Being a member of the NPP does not constitute a protected class envisioned by Congress when it created Section 1985(3) anymore than being a member of the Republican Party was as discussed in *Harrison, supra.* Plaintiff has not, and cannot, distinguish *Harrison* nor the mandates of the Supreme Court that collectively serve to blow her Section 1985(3) claim clear out of her complaint with nary a surviving remnant in sight. In addition, even if Congress had conceived that wholly political conspiracies untainted by political

animus or bias were within the scope of 42 U.S.C. § 1985(3), we find that plaintiff has failed to show that any such *class* was affected by defendants' conduct as opposed to her being affected *personally* or individually. Nevertheless, the basis for our conclusion remains that, given the allegations of the complaint, which we take as true, and the arguments presented by counsel, we cannot find under any conceivable set of facts that plaintiff has stated a claim to which she is entitled to a remedy simply because there can be no Section 1985(3) protection for purely political conspiracies such as the one alleged here. Therefore, we will grant defendant's motion to dismiss plaintiff's claims under Section 1985(3) and consequently, as plaintiff herself concedes, her Section 1986 claims must also fall.

### B. Motion to Dismiss–Eleventh Amendment

A subset of defendant's motion to dismiss involves only one defendant, that is Carmen Rivera, who has been sued in her official capacity as Executive Director of ACAA. Defendant Rivera raises the defense that she cannot be sued as an officer of ACAA because that agency is entitled to sovereign immunity under the doctrine of *Edelman v. Jordan.* This immunity, if applicable, would prevent the state through its officer, i.e., defendant Rivera, from paying any damages that might accrue from this litigation but it would not interfere with any injunctive remedy that might be obtained. It differs from the qualified immunity claim, to be discussed below, insofar as it is directed solely to plaintiff's ability to sue the state in federal court whereas qualified immunity deals with the *personal* protection from damages suits governmental officials sometimes receive. If we find that the state has waived its prerogative to not be sued in federal court then the state must pay for any damages awarded in this litigation in contrast with the case of a failed qualified immunity claim whereby the individual-official personally becomes responsible for the dam-

ages that may accrue.[6] Regardless of these distinctions and niceties the issue before us is whether ACAA indeed is an arm of the state or an alter ego of the state such that suing Rivera as an officer of the state is the same as suing the state and, if so, whether the state has indeed waived its protection from suit in federal court. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Oppenheimer–Mendez v. Acevedo,* 388 F.Supp. 326 (D.P.R.1974), *affirmed* 512 F.2d 1373 (1st Cir.1975).

■ The Eleventh Amendment to the United States Constitution bars federal suits for money damages brought against any of the states. It embodies the sovereign immunity of the states and operates as a limit to our judicial authority under Article III of the Constitution. *Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987); *Pennhurst State School and Hospital v. Haldermann,* 465 U.S. 89, 98, 104 S.Ct. 900, 906–907, 79 L.Ed.2d 67 (1984). The Eleventh Amendment shields states from suits in which, although not normally defendants, they are the real party in interest. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907. At times federal courts will be called upon to decide whether or not a particular suit brought against a government agency or department is in fact an action against the state. If the named defendant is found to be an alter ego or an arm of the state, it will enjoy the sovereign immunity of that state as provided by the Federal Constitution. *Ainsworth Aristocrat Intern. Pty. v. Tourism Company,* 818 F.2d 1034, 1036 (1st Cir.1987); *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516–517 (1st Cir.1987).

■ The First Circuit Court of Appeals has employed a commonly-used formula to determine the status of a particular government entity vis-á-vis the state. This formula includes the following factors:

---

**6.** This is sometimes more true in form than in substance since a state may well pay the damages in a failed qualified immunity case when the official involved is of a high rank, was not grossly negligent, and is otherwise protected by state "hold-harmless" statutes.

1. How the entity is treated by local law in judicial decisions;
2. Whether the agency is performing a governmental or proprietary function;
3. If it has been separately incorporated;
4. The degree of autonomy over its operations;
5. Its capacity to sue and be sued;
6. Whether its property is tax exempt;
7. Whether the state has assumed responsibility over the agency's operations. *Ainsworth*, 818 F.2d at 1037 (*quoting Blake v. Kline*, 612 F.2d 718, 722 (3th Cir.1979).

In examining the relationship between the government officer/defendant and the state most federal courts dealing with this issue have found particularly important the degree of control the state exerts over the agency as well as its fiscal autonomy. To determine the degree of control, a court must consider: "whether [the agency] performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the agency will be satisfied out of the state treasury." *Culebras Enterprises*, 813 F.2d at 517. The source of the funds that will be used to satisfy a potential judgment against a governmental agency has been of particular importance for courts ruling on the immunity issue. *Id* at 517. In that sense it is crucial to examine the day to day financial and operational autonomy of the agency in question, in this case ACAA. Significant in this respect is "whether the company continues to receive significant funding or support from the Commonwealth of Puerto Rico and whether the Governor or any one in his administration exerts significant direct influence over the daily operations of the company." *Ainsworth*, 818 F.2d at 1038.

■ To make the above determination a cursory review of the enabling statute for the agency is not sufficient. Rather, the movant, in this case defendant Rivera, must present the Court with sufficient evidence to show that the Government of Puerto Rico is exercising such control over ACAA that it would pay the judgment emanating from this suit, if any. In addition, what particular governmental function ACAA plays in the economic development policy of the Government needs to be evidenced as well. Also its day to day operational autonomy or its dependency on the Government. In short, we need to know to what degree does the Government of Puerto Rico control the operations of ACAA. Defendants, as movants, have failed to satisfy this burden. They have not presented the Court with any evidence to show that ACAA indeed deserves sovereign immunity. Rather, the crux of their argument revolves around the idea that the statute creating ACAA does not expressly show that the Commonwealth of Puerto Rico has consented to subject itself to suit in federal court. (Citing 9 L.P.R.A. §§ 2060 and 2063.) But this is putting the cart before the horse insofar as whether or not the Commonwealth of Puerto Rico has consented that it be sued in this case depends on whether ACAA can be considered an alter ego of the Commonwealth such that concerns of sovereign immunity would attach. Consequently, we will deny defendant's motion to dismiss *without prejudice* of their raising it again once they have obtained sufficient evidence to deal with the issues delineated above.

### C. Summary Judgment–Qualified Immunity

Defendants assert that they are entitled to qualified immunity from the plaintiff's damages claims pursuant to *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Bonilla v. Nazario*, 843 F.2d 34 (1st Cir.1988). They are claiming immunity for any monetary liability arising from plaintiff's removal as regional manager as well as her claims of post-reinstatement deprivation of functions.

■ Qualified immunity from damages is generally available to public officials for acts taken in the course of their duties that may have violated a party's constitutional

rights when the law defining those rights was not clearly established in plaintiff's favor at the time that the acts occurred. In other words, only when the action is clearly unlawful does a defendant lose his qualified immunity. As expressed by the Supreme Court:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 107 S.Ct. at 339. Under this standard we must consider the entire record before us, *see Unwin v. Campbell,* 863 F.2d 124 (1st Cir.1988), and make a two-step inquiry whether at the time that the actions complained of occurred there was clearly established federal law prohibiting: (1) the removal of plaintiff from her position as regional manager of ACAA; and (2) the alleged deprivation of duties claimed by plaintiff in her amended complaint that resulted once she was reinstated by order of this Court in its preliminary injunction ruling. As to the first issue, i.e., the removal of plaintiff from her job as regional manager, we need not say much since the First Circuit has squarely addressed the issue in the case of *Bonilla v. Nazario, supra.* In that case other regional managers of ACAA were discharged and reassigned to lesser positions. They brought a section 1983 action for reinstatement and damages claiming that their dismissals were politically motivated in violation of the United States Constitution. And they further alleged that they had been harassed and discriminated against in their continuing employment at ACAA. These facts are very similar to those before us insofar as plaintiff, also a regional manager of ACAA, was likewise discharged, and although reinstated to the same job she claims to have been effectively "reassigned" (read: demoted) insofar as she has received only menial duties. Therefore, like the plaintiffs in *Bonilla,*

plaintiff herein claims she is being harassed and discriminated against in her continuing employment at ACAA.

Defendants in *Bonilla* moved for summary judgment on the grounds that they had qualified immunity with respect to the damages claimed. The First Circuit discussed the appropriate legal standard. (That standard is now well known to all those concerned with this field of patronage dismissals given the extensive jurisprudence that has resulted from the teeming number of political dismissal cases in this District.) In a rather curt approach to the *Bonilla* facts, our appellate court briefly discussed the relevant law as well as the politically important position that ACAA occupies in Puerto Rico. The Court concluded that "at the very least the ACAA's authority in respect to auto insurance premiums, accident liability, and appropriate medical care 'encompasses issues that potentially involve partisan political disagreement concerning policy goals and implementation.'" *Id.* at 36 (*citing Méndez Palou v. Rohena Betancourt,* 813 F.2d 1255, 1260 (1st Cir.1987)). The Court then went on to state that the regional manager's job potentially concerned matters that involved at least "a modicum of policy-making responsibility" as well as "access to confidential information" and "official communication." *Méndez–Palou, supra.* Next, the Court discussed the particular duties of the regional manager as stated in the official job description, which are almost identical to the one before us, and found that these duties could potentially affect politically sensitive matters within ACAA and thus party affiliation could be an appropriate qualification for the performance of the job. We will not detail the particular duties of the regional manager in this case as they are practically a mirror-image of those discussed by the First Circuit in *Bonilla* and which can be found in the appendix to that opinion. Our conclusion is foregone. Based on the First Circuit mandate we must hold that as to the issue of her initial discharge as regional manager of ACAA, defendants are entitled to qualified immunity and therefore the motion for

summary judgment will be granted since plaintiff has failed to show that there is triable issue of fact that would preclude entry of partial judgment at this time. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■■■ The second issue raised by plaintiff in her amended complaint and attacked by defendants in their motion for summary judgment and subsequent supplements is whether the reduction of plaintiff's duties, despite her receiving the same salary and position as she had prior to filing the complaint, constitutes conduct that, taken as true for purposes of this motion, was clearly unlawful at the time the action was taken. It is apparent to this Court that there is substantial confusion about this issue to this day and therefore it is hard to see how the law could have been clear at *any* time. In point of fact, the First Circuit has been grappling with this knotty question of whether conduct short of a discharge is actionable under § 1983 jurisprudence[7] for more than a year in a case which it decided and later withdrew pending a rehearing en banc. That case is *María M. Agosto de Feliciano v. Awilda Aponte Roque,* slip op. No. 86–1300, 1987 WL39747 (1st Cir. August 14, 1987). *See also Torres Hernández v. Padilla,* slip op. Nos. 86–1643, 86–1644, 1987 WL39748 (1st Cir. June 22, 1987) *opinion withdrawn and en banc pending.* The question still pending in *Agosto de Feliciano,* and apparently in other cases, is whether a reassignment of duties of career employees of the Commonwealth Department of Public Education for political reasons constituted a violation of those plaintiffs' freedom of association rights under the first amendment and therefore was actionable under 42 U.S.C. § 1983. Initially, the First Circuit panel held this conduct was an actionable

claim under the first amendment. However, upon petition for rehearing, the Court of Appeals withdrew the decision and agreed to a rehearing en banc. The long pendency of that decision has also paralyzed several similar cases pending before this District.

Since the *Agosto de Feliciano* panel expressly left open the question of whether qualified immunity was appropriate in cases of allegations of deprivation of functions we can only conclude at this time that the law was not and has not been clearly established on this matter. The fact that *Agosto de Feliciano* has been "hanging fire" for so long serves to bolster our conclusion that the law in the area of alleged unconstitutional demotions is not easily ascertainable by jurists let alone officers in the line of duty. Up to now, the wealth of jurisprudence in this area, including Supreme Court opinions, has dealt with whether the first amendment prohibits politically motivated *dismissals* where political affiliation was not an appropriate requirement for the job. And even this issue has been far from clear given that the First Circuit has described the teachings of the *Elrod–Branti, supra,* line of cases as "skeletal" and qualified immunity has practically rained on a variety of defendants because of this lack of clarity in the law. *See Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 240 (1st Cir.1986) *en banc cert. denied* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The First Circuit has also described this line of cases as difficult to predict, *Juarbe Angueira v. Arias,* 831 F.2d 11, 13 (1st Cir.1987); and "very murky", *Rodríguez v. Muñoz,* 808 F.2d 138, 140 (1st Cir.1986). In *Agosto de Feliciano,* the Court of Appeals recognized that "neither *Elrod* nor *Branti* directly addressed the question whether other burdens of the patronage system short of threatened or actual dismissal might similarly violate first amendment rights." Slip

7. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). *See also Figueroa Rodríguez v. Aquino,* 863 F.2d 1037 (1st Cir.1988) (Torruella, J. dissenting). In his dissent in *Aquino,* Judge Torruella states that "we are presently engaged in debating whether conduct short of a discharge is actionable under *Branti*" and that the Second Circuit has already answered that question in the affirmative. *Id.* at 1050, fn. 11 (citing *Lieberman v. Reisman,* 857 F.2d 896 (2nd Cir.1988)).

op. at 4 (*citing Delong v. United States,* 621 F.2d 618 (4th Cir.1980)). Although *Agosto de Feliciano* is not precedent, we find, from our review of the jurisprudence in this area; of the full record in this case, and of the painstaking musings of the First Circuit, that, far from clear, the law in this particular area is worse than that with which the First Circuit has struggled through a long string of cases concerning the *Elrod–Branti* strictures on politically based dismissals. If the law was not clearly established as to high public office holders in run-of-the-mill political dismissal cases, then, similarly, it stands to reason that the defendants could not be on notice that it was clearly unlawful to provide these high public office holders, such as plaintiff, with lesser functions than those called for by their official positions. It is important to keep in mind that whether in fact defendants' conduct was retribution for plaintiff's successful reinstatement to her position and therefore based on her political affiliation to the NPP is not the consideration before us at this time. Should the First Circuit finally decide that a demotion is *actionable* under § 1983, that decision will not answer the only question before us, which is whether the conduct of defendants was one that was *clearly* unlawful at the time it was committed. We cannot conclude that it was and we doubt that the First Circuit will say anything to the contrary. Consequently we rule in favor of defendants on this matter and grant their motion for qualified immunity *in toto.*

## CONCLUSION

Based on the foregoing, the Court rules as follows:

1. Defendants' Motion to Dismiss plaintiff's Section 1985(3) and Section 1986 claims, filed on August 12, 1986 (docket No. 56) is hereby granted and partial judgment shall be entered accordingly;

2. Defendant Carmen Rivera's Motion to Dismiss all damages claims against her based on the eleventh amendment, filed on June 27, 1986 (docket No. 48), is hereby denied without prejudice;

3. Defendants' motion for summary judgment based on qualified immunity, filed on November 5, 1986 (docket No. 62), is hereby granted and partial judgment shall be entered dismissing all damages claims in the complaint against the defendants in their individual capacity.

The trial date of this case is hereby scheduled for January 30, 1990, at 9:30 a.m. The United States Magistrate is to set a pretrial conference in conformance with this date and to explore as well the possibility of the parties consenting to a trial before him.

IT IS SO ORDERED.