Maria **ALDARONDO LUGO,**
et al., **Plaintiffs**

v.

**MUNICIPALITY OF TOA BAJA,**
et al., **Defendants**

No. CIV. 02–1123(JP).

United States District Court,
D. Puerto Rico.

Aug. 6, 2004.

Andrés Guillemard–Noble, Nachman & Guillemard, San Juan, PR, for Plaintiff.

Jorge Martínez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Juan R. González–Muñoz, Vanessa Vicéns, González Muñoz Law Office, Michael C. McCall, Michael Craig McCall Law Office, San Juan, PR, for Defendants.

### *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it "Plaintiffs' Urgent Motion Requesting Stay of Opinion and Order" dated August 4, 2004 (docket No. 157). In such Motion, Plaintiffs allege that the Court has engaged in "the unusual tack of deciding the merits of plaintiffs' First Amendment claims, as intertwined with the qualified immunity defense." Plaintiffs have misunderstood the decision of this Court. The Court hereby **DENIES** Plaintiffs' request for a stay for the reasons set forth below.

## II. PROCEDURAL BACKGROUND— THE MOTIONS

The first motion filed by Defendants was the "Motion Requesting the Court to Grant Summary Judgment Dismissing the Due Process Claims, Find that the Individual Defendants are Entitled to Qualified Immunity and Dismiss the Claim for Punitive Damages Against the Municipality and the Official Capacity Defendants" (docket No. 64). In such motion, Defendants requested (1) the grant of summary judgment for the dismissal of the due process claims, (2) the dismissal of the punitive damages claims against the current Mayor of the Municipality of Toa Baja—Mr. Víctor Santiago–Díaz (the "New Mayor") and the former head of the human resources department of the Municipality of Toa Baja—Ms. Milagros Delgado ("Ms.Delgado"), both in their official capacity, and

against the Municipality, and (3) a finding that the New Mayor and Ms. Delgado, both in their personal capacity, are entitled to qualified immunity. With "Plaintiffs' Opposition to Defendants' Motion for Summary Judgment" (docket No. 70), and "Plaintiffs' Sur–Reply to Official Capacity Defendants' Reply" (docket No. 86), Plaintiffs agreed to the dismissal of the due process claims with prejudice and clarified that the punitive damages claim was solely against the New Mayor and Ms. Delgado, in their personal capacity. At that point, the only issue remaining before this Court was the qualified immunity issue.

In page 39 of Defendants' "Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Plaintiffs' Statement of Uncontested Facts" (docket No. 79), they stated that because "the vast majority of the facts contained in the S[ummary of] U[nconstested] M[aterial] F[acts had not been] contested by plaintiffs, plaintiffs ha[d] failed to establish a prima facie case of political discrimination under the First Amendment." Plaintiffs' knee-jerk reaction was set forth in "Plaintiffs' Sur–Reply to Defendants' Reply" (docket No. 89):

> The *prima facie* argument, although unfounded, was not among the topics discussed in either the "Defendants' Motion for Summary Judgment" or Plaintiffs' subsequent opposition. Clearly, Defendants are trying to submit before this Honorable Court a totally new motion for summary judgment on prima facie grounds after the deadline for submitting said motions expired.
>
> Accordingly, Plaintiffs request that this Honorable Court rule that Defendants have overstepped their boundaries

in including a new legal argument in their "Reply to Plaintiffs' Opposition to Summary Judgment," and that said claim be stricken for purposes of the present motion for summary judgment. The Court agreed with Plaintiffs' characterization of Defendants' statement as a new claim. The Court also decided that such claim was not ready for resolution because Plaintiffs had not had the opportunity to oppose such claim.

Therefore the Court did two things. Firstly, on July 29, 2004, it issued an Order (docket No. 156) granting Plaintiffs until the end of business of Friday, August 13, 2004, to submit an opposition to Defendants' claim that Plaintiffs failed to establish a prima facie case of political discrimination under the First Amendment. Secondly, the Court decided the qualified immunity issue before it. In the Court's Opinion and Order of August 2, 2004 (docket No. 157)(the "Opinion"), the Court decided that the New Mayor and Ms. Delgado, in their personal capacity, are entitled to the qualified immunity defense against the First Amendment claims,[1] and therefore dismissed the First Amendment claims against them. The claims remaining in this case are basically the First Amendment claims of all Plaintiffs against the Municipality of Toa Baja, and the New Mayor and Ms. Delgado, both solely in their official capacity.

Our Opinion effectively barred any monetary recovery in this case. This brings us to Plaintiffs' desperate attempt to resuscitate their argument with "Plaintiffs' Urgent Motion Requesting Stay of Opinion and Order." In such motion, Plaintiffs argue that the Court "focus[ed] and decid[ed] the merits of plaintiffs' First

---

1. The Opinion did not address the claims of Plaintiffs who had only suffered harassment. Therefore, the First Amendment claims of those Plaintiffs against all Defendants, as well as the punitive damages claims of those Plaintiffs against the New Mayor and Ms. Delgado, both solely in their personal capacity, are still alive.

Amendment claims without the benefit of plaintiffs' brief in opposition to Defendants' First Amendment Reply." According to Plaintiffs, the Cour has allegedly "t[aken] the unusual tack of deciding the merits of plaintiffs' First Amendment claims, as intertwined with the qualified immunity analysis."

The Court would like to reiterate that it has not decided on the merits of Plaintiffs' claims. If the Court had decided on the merits, the claims against the Municipality, and the New Mayor and Ms. Delgado, both in their official capacity, would have been dismissed. In addition, the Court would have gotten rid of the claims of those Plaintiffs who only raised the issue of harassment.

## III. LEGAL FRAMEWORK AND ANALYSIS

The Court now embraces its pedagogical obligation. The judge-made test to determine if a public official is entitled to the qualified immunity defense is comprised of three parts: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether the constitutional right at issue was clearly established at the time of the putative violation; and (3) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir.2004) (citations omitted); see also *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004). Defendants' discussion in their motion for summary judgment focused on the second and third prongs of the qualified immunity inquiry. Nevertheless, the Court's discussion will focus on the first prong. Once there is a negative answer to the first prong, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194,

201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In most qualified immunity analyses, the first prong is the easiest to establish. This is for two reasons. The first one is that if the qualified immunity inquiry is raised at the motion to dismiss stage, the courts must circumscribe themselves to plaintiff's allegations as set forth in the complaint. *Mihos*, 358 F.3d at 99 (citation omitted). The second one is that many constitutional violations "are strictly a product of the perpetrator's actions." *Rivera–Torres v. Ortiz Vélez*, 341 F.3d 86, 96 (1st Cir.2003). In these situations, the defendant's intent is excluded from the qualified immunity analysis, which makes the task somewhat easier. *Id.* Examples include claims under the Fourth Amendment for arrests without probable cause and claims under the Fifth Amendment for interrogations by the police without the benefit of being advised of one's right to counsel. *Id.* (citations omitted).

In this case, the qualified immunity has been raised at the summary judgment stage. The Court is then obligated to look at "the record," particularly with respect to a defendant's acts, and "determine whether a genuine issue does or does not exist concerning qualified immunity." *Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 90 (1st Cir.1994). A plaintiffs' allegations are no longer enough. To make matters trickier, Defendants' subjective intent is an essential element of the constitutional claim in this case. *Acevedo–García v. Vera–Monroig*, 204 F.3d 1,11 (1st Cir.2000). And such element "cannot be divorced from the qualified immunity inquiry." *Rivera–Torres*, 341 F.3d at 97. The establishment of the first prong is not so easy anymore.

Therefore, the Court is not surprised that Plaintiffs have confused the qualified immunity inquiry at the summary judg-

ment stage with a resolution of the case in the merits. In *Bonilla v. Nazario*, 843 F.2d 34 (1st Cir.1988), the district court (i) granted a motion for summary judgment on qualified immunity grounds and (ii) dismissed the complaint on the merits *sua sponte*, thereby getting rid of the First Amendment claims against the defendants in their official capacity as well. The court effectively foreclosed the possibility of plaintiffs obtaining any relief, monetary or equitable, at all. The First Circuit affirmed finding on qualified immunity and revoked the dismissal on the merits. The First Circuit stated that, particularly in a *sua sponte* dismissal on the merits, it was important that "the losing party [be] on notice that she had to come forward with all of her evidence", and such had not been the case. *Bonilla*, 843 F.2d at 37 (citations omitted).

The First Circuit then explained that a particular choice of legal strategy for a qualified immunity defense does not preclude the bringing forth of additional evidence for the resolution **in the merits**. However, in that case, the bringing forth of additional information **did not** reopen the qualified immunity determination. This analysis implies that analyzing the same element—a particular position within the government—for two different tests (qualified immunity, the merits), does not mean that the requirements and the conclusions of the tests will be the same.

 In the this case, the Court began with the first prong of the qualified immunity analysis with a review of the record to determine whether the plaintiff established that a particular defendant violated its constitutional rights. In the complaint, Plaintiffs allege that they suffered adverse employment actions due to their New Pro-

gressive Party political affiliation, in violation of their free speech under the First Amendment. Plaintiffs' claims arise from a process of re-classification undertaken by the New Mayor upon assuming office. The New Mayor and Ms. Delgado are members of the Popular Democratic Party.

Defendants' motion for summary judgment included a summary of uncontested material facts that presented their version of this case, all supported by evidence. The Court reviewed such version in depth. For a thorough discussion of the facts, please see our Opinion. For our purposes, it is important to highlight that in the New Mayor's affidavit, as well as in Ms. Delgado's affidavit, the Court found direct statements of non-discriminatory animus [pages 5–6 of Exhibit A]. Plaintiffs admit that the facts presented by Defendants with respect to the re-classification "sp[oke] to [Defendants'] alleged motivation." Then, Defendants paid lip service to the first and third prongs of the qualified immunity test, and addressed the second prong of the qualified immunity inquiry at length: whether the right was clearly established. The Court disregarded their legal argument; it has been clearly established since at least 1990 that non-policymaking public employees [2] are constitutionally protected from adverse employment decisions on account of their political affiliation. *Gómez–Candelaria v. Rivera Rodríguez*, 344 F.3d 103, 109–110 (1st Cir.2003) (citations omitted). However, as part of its analysis, the Court reviewed the factual support for Defendants' legal conclusion. Defendants explained that "they were acting to remedy violations of the personnel law … as they were obligated to do under Puerto Rico law, at penalty of criminal prosecution." (page 34).

---

**2.** The Court is assuming for purposes of this Order that the positions are all non-policy- making positions.

Plaintiffs reacted to Defendants' motion with their motion in opposition. Their motion was accompanied by an alleged "Statement of Contested Material Facts," a blatant misnomer. Please see the Order. Plaintiffs argued that the qualified immunity defense should not be extended to the New Mayor and Ms. Delgado because (i) the law was clearly established, which the Court agrees with, and (ii) their actions were not reasonable. Plaintiffs were of the view that Defendants' motivation was not reasonable because it was discriminatory. In fact, they state that "Defendants' disregard of the information possessed at the time of their actions ... demonstrate the politically-motivated nature of their actions" (parenthetical ours). Plaintiffs engaged in the same methodology that they are condemning: they discussed motivation as part of the third prong of the qualified immunity inquiry. The Court did it as part of the first prong.

At this stage, the Court had to "determine whether ... [P]laintiffs ha[d] introduced sufficient evidence to create a genuine issue of material fact that [Defendants] violated [Plaintiffs'] constitutional rights, and if so, whether [Defendants] [we]re otherwise entitled to qualified immunity." *Febus–Rodríguez*, 14 F.3d at 91 (*emphasis ours*). The Court took into consideration that "[t]he nonmovant cannot simply rest upon mere allegations ... Instead, the nonmoving party must adduce specific, provable facts which establish that there is a triable issue." *Febus–Rodríguez*, 14 F.3d at 90 (citing *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990)).

■ As the Court stated in its previous Opinion, the Court has gone through the record to identify the contested facts, if any, and has followed such scavenger hunt with a determination on whether they create a triable issue with respect to a material fact. Despite the Court's efforts in thoroughly analyzing the facts, which efforts could frankly be interpreted to border on being the advocate for Plaintiffs, the Court reached an answer in the negative. Plaintiffs had not been able to create a triable issue with respect to motivation. Plaintiffs basically asked the Court to counter Defendants' evidence of non-discriminatory animus with pure conjecture, pure conclusions. Even though the Supreme Court has made clear that there is no heightened pleading standard for the motivation element of a First Amendment claim for political discrimination, " 'bare allegations of malice' cannot overcome the qualified immunity defense." *Crawford–El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759(1998) (citations omitted).

The Court was surprised when Plaintiffs stated in their motion that "[a] casual reading of the Opinion and Order's recitation of the facts makes it abundantly clear that plaintiffs' were not given the opportunity to present the facts in support of their prima facie case."

The Court undertook an analysis of qualified immunity with the record before it. The law was clearly established, the second prong was met, but that was not dispositive of the defense. If fulfilling the second prong were dispositive of a qualified immunity defense in a case where motivation is an essential element of the constitutional claim, then there would be no qualified immunity defense that could withstand the summary judgment stage. This is so because it is very difficult to support with evidence the element of intent. So, the Court analyzed Defendants' and Plaintiffs' motions and searched for the political animus. The Court did not intend to solve, and did not solve, the First Amendment claim in the merits. It simply applied the burden established by the First Circuit to Plaintiffs' evidence at a

particular point in time for purposes of the first prong. Unfortunately for Plaintiffs, they lost.

The Court would like to reiterate that the qualified immunity inquiry is "separate and distinct" from the inquiry into the merits. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998). Although the variables in the "qualified immunity" and "merits" equations may be the same, the standards to be applied to those variables differ substantially. *Id.* at *4. In this case, the Court had to analyze the motive element for the qualified immunity inquiry. It is true that such element also needs to be analyzed when contemplating the merits of a First Amendment claim. But the sharing of a common factual basis for a determination does not mean that the test for such determination is the same.

So, after Defendants presented evidence of non-political animus as part of their second prong analysis, Plaintiffs stood by and did nothing. The result of such inaction is the dismissal of the First Amendment claims due to the qualified immunity defense. At this point there is no looking back with respect to the qualified immunity analysis. When Defendants incorporated evidence of motivation into their motion for summary judgment, **Plaintiffs had notice that they had to oppose such evidence or they could lose the qualified immunity inquiry.**

Plaintiffs are attempting to get a second shot at the bat by alleging that the Court made a determination in the merits. The Court will not allow it. The Court has not determined that there is no political discrimination in this case. It simply has granted qualified immunity to two public officials. The determination in the merits will come later, and that is why Plaintiffs have until August 14, 2004 to address that issue.

In this case Plaintiffs have failed the first prong of the qualified immunity test. They have failed to show a constitutional violation because they have not provided the Court with evidence of political animus. As the Court stated before, the Court will not address the second and third prongs of the qualified immunity test because it is unnecessary. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Therefore, the Court reiterates its holding that Defendants are entitled to the qualified immunity defense.

## IV. CONCLUSION

The Court hereby **DENIES** Plaintiffs' request for a stay (docket No. 157).

**IT IS SO ORDERED.**